# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | | |
|---|---|---|
| NATIONAL LABOR RELATIONS BOARD, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 08-cv-1361 |
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO, | ) ) ) ) | |
| Defendant. | ) ) | |

## O P I N I O N and O R D E R

Before the Court are the Motion to Dismiss and/or Quash or in the alternative, for Judgment on the Pleadings (Doc. 25) and the Motion to File a Reply Brief (Doc. 29) filed by Defendant. Both Motions are DENIED.

### BACKGROUND

Plaintiff filed an Application for Order Enforcing Investigative Subpoena Duces Tecum on December 18, 2008 (Doc. 1). Plaintiff seeks an Order that would compel William E. Dugan, who was the President/Business Manager of Defendant, to comply with a subpoena related to an investigation initiated by Plaintiff pursuant to the National Labor Relations Act. 29 U.S.C. §§ 151, *et seq*.

The investigative subpoena duces tecum was issued and mailed to Dugan on November 9, 2006. It directs Dugan to appear with various documents at Plaintiff's office in Peoria, Illinois. Defendant (hereinafter Local 150) challenged the subpoena

1

before the National Labor Relations Board (NLRB) via a petition to revoke. The petition was denied by an NLRB order dated May 29, 2007. Since that time, Defendant has not complied with the subpoena, prompting the present suit.

After some issues regarding service, which were resolved in an Order dated February 1, 2010 (Doc. 20), Defendant filed an Answer and the pending Motions. Defendant argues that venue is improper in the Central District of Illinois because the subpoena was served and the documents sought by Plaintiff are located in the Northern District of Illinois. Defendant further argues that because Dugan no longer is employed by Defendant and resides in Maryland, he is beyond the subpoena power of the NLRB, Subregion 33, located in Peoria, Illinois. Defendant also argues that because the underlying charge which compelled the NLRB to launch an investigation was settled vis-à-vis Defendant and the charging party, Brad Bawden, it is entitled to judgment on the pleadings. Finally, Defendant argues that the subpoena should be quashed because it is overbroad and burdensome.

## DISCUSSION

### I. Venue

Title 29 U.S.C. § 161(1) provides that the NLRB may issue subpoenas requiring the presence and testimony of witnesses and the production of documents related to "any matter under investigation or question." Any such witness may be required to attend or produce documents from any place in the United States, "at

any designated place of hearing." In order to enforce such a subpoena, "[i]n case of contumacy or refusal to obey," any district court

> within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board . . . . Id. at §161(2).

The NLRB served the subpoena upon Dugan at Local 150's office in Countryside, Illinois, which is outside of Chicago and located within the jurisdiction of the Northern District of Illinois. Dugan was directed to appear at the NLRB's Subregion 33 office located in Peoria, Illinois, the office which is conducting the investigation of Bawden's charge. Local 150 has 8 referral offices or districts, three of which purport to cover counties located in this judicial district. The NLRB asserts that Local 150, therefore, does business in the Central District of Illinois and that the unfair labor practices took place in this district.

The investigation in this case is being conducted by the NLRB's Peoria office. Pursuant to the statute, which makes no mention of where a subpoena is served or where documents may be housed, venue to enforce the subpoena lies in this District. *See N.L.R.B. v. Line*, 50 F.3d 311, 313-314 (5th Cir. 1995) (stating that the district court in the district where the investigation is being undertaken has jurisdiction to enforce a duly issued subpoena). Defendant's reliance on Federal Rule of Civil Procedure 45 and arguments to the contrary are simply misplaced. A specific statute grants this Court the jurisdiction to enforce a subpoena issued by the NLRB office in Peoria which is making the underlying inquiry.

## II. Judgment on the Pleadings

Defendant next argues, essentially, that this matter is moot because Bawden and Local 150 have settled their dispute for the sum of $25,000. Without citing to any authority, Defendant asserts that: The NLRB has no independent authority to bring charges against labor organizations or employers. It acts only based on charges filed by individuals or organizations. Once those charges are resolved, its work it at an end, and its jurisdiction to pursue the investigation ceases." (Def. Brief at p. 8). The argument is not well taken.

Defendant has made no argument that the NLRB is without authority to investigate the charges made by Bawden and has cited to no case authority that merely because he has privately settled his claims, the NLRB is divested of jurisdiction or authority. Nor has Defendant provided any case authority that a settlement agreement, entered into without the NLRB's input or approval, necessarily requires termination of its investigation. While the NLRB may not independently initiate an investigation, a charge allows it to initiate an investigation and determine whether a complaint should be filed:

> A charge filed with the Labor Board is not to be measured by the standards applicable to a pleading in a private lawsuit. Its purpose is merely to set in motion the machinery of an inquiry. The responsibility of making that inquiry, and of framing the issues in the case is one that Congress has imposed upon the Board, not the charging party. To confine the Board in its inquiry and in framing the complaint to the specific matters alleged in the charge would reduce the statutory machinery to a vehicle for the vindication of private rights. This would be alien to the basic purpose of the Act. The Board was created not to adjudicate private controversies but to advance the public interest in eliminating obstructions to interstate commerce, as this Court has recognized from the beginning.

*N.L.R.B. v. Fant Milling Company*, 360 U.S. 301, 307-308 (1959). Thus, the NLRB may expand on the original charge and may subsequently allege matters that are related to or grow out of the charge. *Id.*; *See also N.L.R.B. v. Braswell Motor Freight Lines, Inc.*, 486 F.2d 743, 746 (7th Cir. 1973).

Certainly, the NLRB encourages compromises and settlements in an effort to "end labor disputes, and so far as possible to extinguish all the elements giving rise to them." *Wallace Corp. v. N.L.R.B.*, 323 U.S. 248, 253-254 (1944). Such settlements can be entered into once a complaint has been filed, or prior to a complaint, and with the consent and approval of the NLRB, which has the authority to set aside an agreement that is frustrated for various reasons. *See e.g. City Cab Co. of Orlando, Inc. v. N.L.R.B.*, 787 F.2d 1475, 1480 (1986). Regulations provide that the NLRB may afford a party the opportunity to make an offer of settlement prior to the initiation of formal charges and that any such agreements are "subject to the approval of the Regional Director." 29 C.F.R. § 101.7. However, the NLRB's power to "act[] in the public interest to enforce a public right" mandates that "agreements between private parties cannot restrict the jurisdiction of the board." *N.L.R.B. v. Walt Disney Productions*, 146 F.2d 44, 48 (9th Cir. 1944).

It seems to the Court that Defendant is attempting to do an end-run around regulations in this highly regulated field. If it believes that the settlement agreement entered into with Bawden resolves all allegations made in the charge, it should present such an argument to the Regional Director in the first instance. Defendant's scant argument and reliance on case authority outside of the labor

5

relations field does little to convince this Court that the settlement agreement is in accordance with the regulations and procedures governing enforcement of the National Labor Relations Act. Moreover, this Court is convinced that the NLRB should be allowed to evaluate the merits of the settlement agreement in light of the charge and the duty it has to protect the public interest. The Court would also add that notwithstanding the settling of Bawden's individual claims, the charge that he filed makes broader allegations regarding Defendant's treatment of non-members in general.

## III. Scope of Subpoena

Plaintiff is granted the power to subpoena documents that "relate[] to any matter under investigation or in question." 29 U.S.C. § 161(1). Generally, this power is limited to documents and evidence that are relevant to the inquiry at hand. *N.L.R.B. v. North Bay Plumbing, Inc.*, 102 F.3d 1005, 1007-1008 (9th Cir. 1996); *N.L.R. B. v. Caroline Food Processors, Inc.*, 81 F.3d 507, 511 (4th Cir. 1996).

The charge in this matter alleges that Defendant, since May 23, 2006, discriminated against Bawden by causing his employment to be terminated, and that, since February 3, 2006, it "engaged in the operation of an unlawful referral system," discriminated against non-members by charging unnecessary fees unrelated to operation of referral halls, violated its duty of fair representation of non-members, discriminated against Bawden in informing him about his rights, and "caused or attempted to cause various Employers to discriminate against individuals seeking employment through their referral system in order to encourage

6

membership in the Union." (Comp. Ex. B). The subpoena issued by Plaintiff seeks 16 categories of documents. Requests 1, 2, 3, 4, and 5 request general material such as charters and constitutions, collective bargaining agreements, permit procedures and policies, referral rules and policies, and referral permits. Requests 6 seek information about members of Local 150. Requests 7, 8, 9 seek documents related to member dues, rules regarding dues, and operating expenses and fees charged related to referral halls. Requests 10 through 16 seek documents related to Local 150's referral policies, referral lists, person referred, and efforts to fulfill referral obligations. The subpoena is limited to documents and items that were in effect from February 3, 2006 to the present.

Defendant's objections are that it has either provided the documents requested, that it would be unduly burdensome to provide the documents requested, or that the documents requested are irrelevant. Defendant apparently made these *exact* arguments before the NLRB in a brief filed on November 27, 2006. (Comp. Ex. E). Plaintiff responded in a brief that appears to be dated April 6, 2007. (Comp. Ex. F). In the brief before this Court, Plaintiff refers to its April 6, 2007 brief and the NLRB's decision to deny Defendant's motion to revoke the subpoena.

This Court finds that the documents requested by Plaintiff are relevant and, while burdensome, not unduly burdensome. The documents all relate to the charge that Defendant discriminated against non-members in referrals and types of fees charged. Naturally, Plaintiff would be entitled to documents related to the manner in which referrals are made, the policy behind the practices, and the

7

implementation of those polices. Each request is tailored to acquire that information. Moreover, while the number of documents requested does place a burden on Defendant, it does not follow that the burden is undue. The subpoena is temporary limited, to those polices and agreements in place from February 3, 2006 to the present and necessarily must cover all referral halls operated by Defendant. If Defendant does not maintain the documents requested or if it has already turned over all responsive documents, then, certainly, Defendant may so indicate in its response to the subpoena.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss and/or Quash or in the alternative, for Judgment on the Pleadings (Doc. 25) and the Motion to File a Reply Brief (Doc. 29) filed by Defendant are DENIED.

This matter is set for a telephonic status conference on Thursday, March 10, 2011 at 10:30 a.m. (Court to initiate the call) in order to discuss the manner in which this case should proceed.

Entered this <u>28th</u> day of February, 2011

s/ Joe B. McDade
JOE BILLY MCDADE
United States Senior District Judge
